IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAWRENCE GRAY, *On behalf of Z.G., a minor*,<br><br>*Plaintiff*,<br><br>vs.<br><br>NORTHSIDE INDEPENDENT SCHOOL DISTRICT; OFFICER FNU PARSONS, BADGE #2066; OFFICER FNU VILLARREAL, BADGE #2066,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-25-CV-0443-XR |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns Defendants' Motion to Dismiss for Failure to State a Claim. ECF No. 28. The District Court referred the Motion to the undersigned pursuant to Western District of Texas Local Rule CV-72 and Appendix C. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned recommends the District Court grant the Motion, dismiss Gray's § 1983 causes of action against Officers Parsons and Villarreal because they are entitled to qualified immunity, and dismiss Gray's Title VI claim against Northside Independent School District ("NISD") because Gray failed to sufficiently plead intentional discrimination.

## I. Procedural History

This case involves Officer Parsons, Officer Villarreal, and NISD's actions in response to a fight at a high school between Gray's minor son, Z.G., who is African American, and a Hispanic student. First Am. Compl. (Compl.), ECF No. 27. Gray claims the Officers and NISD intentionally discriminated against Z.G. on the basis of race, which is evidenced by the fact that they arrested and disciplined Z.G. for the fight, and did not arrest or discipline the Hispanic student. *Id.* ¶¶ 1–2, 20, 29.

Gray brings suit against Officers Parsons and Villarreal under 42 U.S.C. § 1983 based on the Fourteenth Amendment's Equal Protection clause and against NISD under Title VI of the Civil Rights Act of 1964. *Id.* ¶ 1.

The District Court granted Gray leave to amend his complaint in response to Defendants' prior motion to dismiss. ECF No. 11.

Defendants seek, pursuant to Rule 12(b)(6), to dismiss Gray's complaint because video evidence, which Defendants argue the Court should consider at this stage, shows that Z.G. was more aggressive, meaning he was not "similarly situated" to the Hispanic student. Def.'s Mot., ECF No. 28.

Gray responded to the Motion and Defendants replied. Pl.'s Resp., Def.'s Reply; ECF Nos. 30, 31. The Motion is ripe.

## II. Facts as Alleged by Gray on Behalf of His Son in the Complaint.

This section is a summary of the facts as alleged by Gray, on behalf of his son Z.G., in the Complaint.

Z.G. is a former student of Warren High School, a NISD school which receives federal funding. Compl. ¶ 10. On the morning of October 2, 2024, Z.G., who is African American, and another student, who is Hispanic, agreed that Z.G. could have "some of" the Hispanic student's juice at lunch. *Id.* ¶ 11.

During lunch, the two students were seated across from each other and Z.G. drank from the Hispanic student's juice bottle. *Id.* In response, the Hispanic student "violently slapped the juice bottle" in Z.G.'s hands, causing juice to spray into Z.G.'s eyes and get on his clothes, which Z.G. alleges initiated the ensuing fight. *Id.* ¶ 2, 11. The District's surveillance cameras recorded the fight. *Id.* ¶¶ 11–12. After the fight, a local hospital confirmed Z.G. suffered corneal abrasions from the juice splashing in his eyes. *Id.* ¶ 12.

In response to the fight, Officers Parsons and Villarreal arrested Z.G. for assault. *Id.* ¶ 14. Z.G. was detained, charged, and prosecuted for assault. *Id.* Officers Parsons and Villarreal did not arrest the Hispanic student. *Id.* Z.G.'s mother met with a supervisory officer who agreed the Hispanic student's actions of slapping the juice bottle in Z.G.'s hand constituted assault. *Id.* Based

on this, Z.G.'s mother asked Officers Parsons and Villarreal to press charges against the Hispanic student, but the officers refused. *Id.*

In response to the fight, an Assistant Principal suspended Z.G. for three days and referred him for a hearing on whether to be placed in an alternative school. *Id.* ¶ 14. Z.G.'s father raised concerns with the Principal that Z.G. was being discriminated against on the basis of race, since the school district was only disciplining Z.G., not the Hispanic student. *Id.* The Principal refused to remedy the situation by reducing Z.G.'s disciplinary action or disciplining the Hispanic student in a similar fashion. *Id.*

When Z.G. appeared before an NISD discipline hearing officer, Z.G. and his father again raised concerns that Z.G. and the Hispanic student were being treated differently based on race. *Id.* ¶ 16. The hearing officer did not address Z.G.'s concerns and placed Z.G. in alternative school for one month, depriving him of Warren High School's superior educational and extracurricular opportunities. *Id.*

Prior to this incident, Z.G. had been a student in good standing with no disciplinary history in NISD or in the criminal justice system. *Id.* ¶ 13.

As a reminder, the foregoing factual recital comes from Gray's telling.

## III. Legal Standard

### A. Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts as true and construe all reasonable inferences in the complaint in the light most favorable to the plaintiff. *Kennedy v. City of Arlington, Texas*, 165 F.4th 937, 942 (5th Cir. 2026). A court, however, need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

### B. Effect of Qualified Immunity Defense

Qualified immunity protects government officials performing discretionary functions from civil liability insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a

reasonable person would have known." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity must be "resolved as early in the proceedings as possible." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994) (citing *Siegert v. Gilley*, 500 U.S. 226, 231–33 (1991)). When a defendant asserts qualified-immunity in a motion to dismiss, courts have an "obligation ... to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery." *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986). "The driving force" behind qualified immunity is a "desire to ensure that insubstantial claims against officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (cleaned up). Qualified immunity "is an immunity from suit rather than a mere defense to liability." *Id*.

Once a defendant raises the qualified immunity defense on a Rule 12(b)(6) motion, "a plaintiff must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Kennedy*, 165 F.4th at 943.

## IV. Analysis

Gray sues Officers Parsons and Villarreal under § 1983 for selective enforcement of the law based on race in violation of the Fourteenth Amendment's Equal Protection clause. Compl. ¶ 28. Gray sues NISD under Title VI for allegedly subjecting Z.G. to intentional race discrimination when, after a fight with the allegedly similarly situated Hispanic student who received no discipline, NISD treated Gray more harshly by (1) suspending him from school; (2) sending him to an alternative school for one month; (3) charging him with criminal assault; and (4) depriving him of the opportunity to press charges against the other student involved in the fight. *Id.* ¶ 20.

Defendants assert that Gray's claims should be dismissed because the Officers are entitled to qualified immunity and because Gray failed to sufficiently plead that NISD intentionally discriminated against Z.G. Def.'s Mot. ¶¶ 7–11, 12–17. Defendants ask the Court to consider video evidence of the fight that they attached to their Motion—a request to which Gray did not directly object.

The undersigned recommends considering the video evidence and dismissing all of Gray's claims.

### A. The Court should consider the video when analyzing the sufficiency of the Complaint.

When evaluating the 12(b)(6) issues, the undersigned recommends the District Court consider the video evidence that Defendants attached to their Motion. The undersigned finds that the Complaint sufficiently invoked the video, the video and the fight it depicts are central to Gray's claims, the video shows the fight in full, and Gray has not objected to consideration of the video. Therefore, the video is appropriate for consideration at this stage.

Typically, courts evaluating a motion to dismiss under Rule 12(b)(6) are "confined to the complaint and its attachments." *Kennedy*, 165 F.4th at 942. But this general rule gives way when a defendant attaches documents or videos to its motion to dismiss *and* those documents or videos are "'referenced in the complaint and are central to the plaintiff's claims.'" *Id.* (applying this principle in the context of a § 1983 claim and explaining that it "applies equally to videos" and documents) (quoting *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019)).

Gray's Complaint referred to the video three times: (1) alleging the fight was "captured on the District's surveillance cameras," Compl. ¶ 11; (2) the defendant officers "refused to take action against the other student even though the video evidence established that the student committed assault on Z.G.," *id.*

¶ 14; and (3) the hearing officer "viewed or at least had access to the video of the incident," *id.* ¶ 25.

The video and the fight it depicts are the central focus of Gray's Complaint. The premise of Gray's claims is that, since he and the Hispanic student were "similarly situated" based on their actions *during* the fight, they should not have been treated differently *after* the fight. *See* Compl. at *passim*; Pl.'s Resp. 1, 4 (arguing "[t]he 'similarly situated' analysis is relevant here because under both Title VI and Equal Protection jurisprudence, a plaintiff may establish intentional race discrimination by showing he was treated less favorably than similarly situated individuals" and "it is certainly plausible to conclude that Z.G. and the Hispanic student were similarly situated such that Defendants' decisions could be construed as motivated by race").

In this case, the video provides a sufficiently complete picture of the fight itself to be properly considered at this stage. The video begins approximately two and a half minutes before the Hispanic student arrives at the lunch table and continues until Z.G. is restrained and the Hispanic student is escorted away. The video shows a comprehensive view of the fight because it captures the surrounding area, which provides context, and it captures sufficient detail of the two students fighting to clearly see their individual actions. The video

records both students fully in frame, in focus, and with minimal obstructions such that the full fight is visible.

Finally, Gray has not objected directly to consideration of the video at the stage, nor has he argued that the video is inaccurate or incomplete. Instead of addressing the various in-circuit authorities cited by the Defendants in favor of considering video evidence at this stage, Def.'s Mot. ¶¶ 5, 6, Gray cites to a string of out-of-circuit cases for the premise that "whether parties are similarly situated is generally considered a fact-intensive inquiry" such that "courts caution against deciding whether two comparators are similarly situated on a motion dismiss." Pl.'s Resp at 2–3.

Whatever the merits of this general argument in other situations, it is not a direct objection to considering the video and it is not persuasive in a situation such as this where the video so clearly captures the incident at the core of the plaintiff's claims. Nor is this a situation in which the plaintiff's references to the video are for the "express purpose of criticizing the accuracy." *See Ramos v. Taylor*, 646 F. Supp. 3d 807, 815 (W.D. Tex. 2022) (Pitman, J.) (explaining various reasons for declining to consider video at the motion to dismiss stage, including that the Plaintiff's dispute as to the accuracy). Since Gray does not contest the accuracy of the video, does not contest that his complaint incorporated the video by reference, does not dispute that the video is central

to his claim, and does not confront the relevant law in this Circuit allowing consideration of videos when invoked in the complaint and the video is central to a claim, the undersigned sees no reason not to follow this Circuit's precedent and consider the video evidence.

### B. Facts as Depicted by Video Evidence

The undersigned is mindful that "[w]hen a video recording is included in the pleadings and blatantly contradicts the factual allegations in the complaint," the reviewing court "adopts the video's depiction of events, viewed in the light most favorable to the plaintiff." *Kennedy*, 165 F.4th at 944 (cleaned up). Accordingly, this section is a summary of the events as actually depicted in the video, many of which blatantly contradict the Complaint, but still viewed and described in the light most favorable to Gray's claims.

The video evidence[1] shows that Z.G. was sitting and eating at a largely occupied lunch table, the Hispanic student arrived and sat across from Z.G., set a bottle on the table, then the Hispanic student turned his back to talk to other students. Video Evid. at 2:30–2:50. While the Hispanic student had his back turned, Z.G. quickly grabbed the plastic bottle and began hurriedly drinking nearly all the contents. *Id.* When the Hispanic student turned around,

---

[1] The parties agree that NISD's surveillance cameras captured the fight that is the subject of this lawsuit. Compl. ¶ 14; Def.'s Mot. ¶ 6. Defendants submitted a flash drive containing video of the fight with their motion. Def.'s Mot. Ex. A, Video Evid., ECF No. 28-1.

he slapped the bottle in Z.G.'s hand, spilling some of the contents on Z.G. *Id.* Z.G. threw the bottle back at the Hispanic student. *Id.*

Next, the video shows Z.G. climbing over the table towards the Hispanic student and repeatedly punching him in the face with closed fists. Video Evid. at 2:50–3:12. The Hispanic student threw no punches, used his outstretched arms to hold Z.G. at arms-length, and then tried to cover his face with his hands and arms when he was overpowered. *Id*. When the Hispanic student fell to the floor, Z.G. stayed on top of him, continuing to punch and strike him in the face. *Id*. Z.G. continued to strike the Hispanic student until an adult grabbed Z.G. and pulled him away by holding him in a headlock on the floor. *Id.* Once school officials eventually separated the two students, the Hispanic student was wiping blood from his face. *Id*. at 3:14–3:50.

### C. Officers Parsons and Villarreal are entitled to qualified immunity on Plaintiff's § 1983 claim.

Gray brings a § 1983 claim against Officers Parsons and Villarreal, alleging the Officers deprived Z.G. of his right to be free from race-based selective enforcement of the law in violation of the Fourteenth Amendment's Equal Protection clause.

Section 1983 provides a private right of action against every person acting under color of state law who imposes or causes to be imposed a

deprivation of constitutional rights. 42 U.S.C. § 1983; *Owen v. City of Independence, Missouri*, 445 U.S. 622 (1980).

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996) (citing *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985)). The Equal Protection Clause prohibits selective enforcement of the law based on race. *Whren v. United States*, 517 U.S. 806 (1996). To successfully bring a race-based selective enforcement claim, a plaintiff must allege facts demonstrating the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right. *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999).

In addition to his race-discrimination claim, Gray advances a "class of one" claim, which requires a showing that the government intentionally treated Z.G. "differently from others similarly situated," and "that there [was] no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 823–24 (5th Cir. 2007).

In their Motion, the Defendants assert that Officers Parsons and Villarreal are entitled to qualified immunity from Gray's § 1983 claims. Def.'s

Mot. 8–10. "Qualified-immunity defenses are analyzed under a two-prong inquiry." *Kennedy,* 165 F.4th at 943 (citations omitted). "Under the first prong, the plaintiff must plausibly allege that the officers violated a federal statutory or constitutional right." *Id.* (cleaned up). "The second prong requires that the unlawfulness of the conduct be *clearly established* at the time of the alleged misconduct. *Id.* (cleaned up) (emphasis added).

**1. Gray fails to overcome the officers' qualified immunity defense by failing to identify precedent showing Officers Parsons and Villarreal's allegedly wrongful conduct violated clearly established law.**

The undersigned finds that Gray neither addresses the second, "clearly-established," prong in his Complaint nor in his Response.[2] As a result, Gray failed to meet *his burden* to overcome Officers Parsons and Villarreal's qualified immunity defense. *See Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) ("a plaintiff seeking to defeat qualified immunity must show … that the right was clearly established at the time of the challenged conduct." (internal quotations omitted)).

The undersigned therefore recommends that the District Court dismiss Gray's § 1983 claim because the Officers are entitled to qualified immunity. *See*

[2] None of the cases Gray cites that would be precedential in the Fifth Circuit address a similar factual scenario in which a school-based peace officer violates a law by arresting an African American student involved in a fight, while declining to press charges against a Hispanic student involved in the same fight, when the African American student escalated the conflict by throwing the first punch, and the Hispanic student threw no punches.

*Kennedy*, 165 F.4th at 943 (explaining that "Courts may address the prongs in either order and may resolve the case on a single prong.") (cleaned up).

### 2. The video evidence shows Z.G. and the Hispanic student were not "similarly situated."

Gray also fails to meet his burden on the first prong because he fails to allege a plausible violation.

To state a claim of racial discrimination under the Equal Protection Clause, the plaintiff must allege "that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). To establish disparate treatment, a plaintiff must identify a "similarly situated" person who is not a member of the protected class, but is otherwise under "nearly identical" circumstances, was treated differently. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)).

Gray alleges Z.G. and the Hispanic student were "similarly situated" because they both committed assault during the fight. Compl. ¶¶ 30, 32. Defendants argue the Court should rely on the video evidence to find Z.G. and the Hispanic student were not "similarly situated" because their conduct, levels of aggression, and injuries were different. Def.'s Mot. at 7. The video evidence conclusively supports the Defendants' position.

The undersigned remains mindful that, at this stage of the proceedings, to the extent the video "blatantly contradicts the factual allegations in the complaint," courts should adopt "the video's depiction of events, viewed in the light most favorable to the plaintiff." *Kennedy*, 165 F.4th at 944.

However, the video conclusively shows that Z.G. initiated the confrontation, acted much more aggressively than the Hispanic student, and the two students were not under "nearly identical" circumstances. *Wheeler*, 415 F.3d at 406. The undersigned finds that the depictions in the video "blatantly contradict" Gray's representations in the Complaint—the undersigned recommends that the Court adopt the video's depiction of events and conclude that the two students were not similarly situated.

While viewed in the light most favorable to Z.G., it is possible that the Hispanic student may have initiated the *physical* altercation by slapping the juice bottle in Z.G.'s hand, which could potentially qualify as assault. But Z.G. instigated the confrontation. Even taking as true that the Hispanic student had previously agreed to give Z.G. his juice, the video shows that the manner in which Z.G. took the bottle was the instigating event. In the undersigned's view of the video, Z.G.'s lips do not move indicating that there was no discussion, Z.G. quickly grabbed the bottle while the Hispanic student was not looking, Z.G. rapidly unscrewed the lid, and then quickly drank nearly all the contents.

Video Evid. at 2:30–2:50. The Complaint asserts that the two students had agreed that Z.G. could drink "some of" the juice, but the video depicts Z.G. surreptitiously and hastily consuming nearly all of the juice before the Hispanic turned around.

The Hispanic student responded by slapping the bottle in Z.G.'s hand—but he did so with insufficient force to dislodge the bottle from Z.G.'s hand. Video Evid. at 2:46–2:48. Z.G. responded by throwing the bottle at the Hispanic student and it is evident that the two exchanged words. *Id.* at 2:48–2:51. While a court may plausibly conclude the two students were similarly situated at this point, what the video depicts next blatantly contradicts such a characterization.

Next, Z.G. jumped up onto his seat, stepped onto the table, and lunged at the Hispanic student. *Id.* at 2:51–2:54. Z.G. escalated the altercation by climbing over the table to reach the Hispanic student.

Z.G. escalated further when he pursued and repeatedly hit the Hispanic student, who was retreating and defending himself by blocking (not throwing) punches. Z.G. continued to hit the Hispanic student after both students fell to the floor. *Id.* at 3:03. Z.G. escalated further by forcefully and repeatedly striking the Hispanic student in the face while he was on the floor.

The force used by Z.G. to punch the Hispanic student's face and body, which was enough to knock the Hispanic student to the floor and draw blood, far exceeded the force used by the Hispanic student in slapping the juice bottle, which was sufficient to spill the juice but insufficient to dislodge the bottle from Z.G.'s hand.

The Hispanic student threw no punches and only held his hands up defensively. *Id*. at 2:48–3:12. The fact that the Hispanic student threw no punches, while Z.G. threw at least 15-20 punches, belies any notion that the two were similarly situated.

The undersigned finds, based on the video, that the two students were not "similarly situated." Even making inferences in favor of Z.G., the factual allegations in Gray's complaint that the two were similarly situated are blatantly contradicted by the video and those allegations are not plausible.

**3. The facts, as described in the Complaint alone, do not support the conclusory statement that the two students were similarly situated.**

Putting aside the video, Gray's factual allegations undermine the conclusory assertion that the two students were "similarly situated." Gray acknowledges that Z.G. "hit the [Hispanic] student several times." Compl. ¶ 12. Other than asserting that the Hispanic student started the fight by "violently slapp[ing] the juice bottle from" Z.G.'s hands, Compl. ¶ 11, Gray

does not assert that the Hispanic student hit or punched Z.G. Instead, Z.G. merely contends that the Hispanic student "fought back" (put aside, for the moment, that this assertion is blatantly contradicted by the video) "but Z overcame him." *Id.* The undersigned cannot plausibly conclude that two students, one who violently slapped a juice bottle from the other's hand, and the other, who "hit" the one student "several times" and then "overcame" him are "similarly situated." The allegations in the Complaint itself, independent of the video, do not provide factual support for the conclusion that Z.G. was similarly situated.

**4. Because the two students were not "similarly situated," Officers Parsons and Villarreal did not violate clearly established law.**

To state a claim of racial discrimination under the Equal Protection Clause, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor*, 257 F.3d at 473.

In this case, Gray bases his race-discrimination Equal Protection claim on the differences in how Z.G. and the Hispanic student were treated. Because the undersigned finds Z.G. and the Hispanic student were not "similarly situated," Officers Parsons and Villarreal could not have violated the Equal Protection clause in treating them differently.

Gray's "class of one" claim fails for the same reason. Since Gray's class-of-one claim, like his race-discrimination claim, turns on identification of a "similarly situated" individual, it also fails. *Village of Willowbrook*, 528 U.S. at 564; *Stotter*, 508 F.3d at 823–24.

In this instance, in order overcome prong one of the qualified immunity defense, Gray has the burden of demonstrating that it was plausible the Officers violated a federal right, which requires Gray to make plausible allegations that Z.G. and the Hispanic student are similarly situated. In light of the video evidence, the undersigned finds that Z.G. and the Hispanic student are not plausibly "similarly situated." Accordingly, the undersigned recommends that the Officers are entitled to qualified immunity on prong one, which provides a second and independent basis for dismissing the § 1983 claims against the Officers.

**D. Gray does not meet the pleading standard on his Title VI claim because his only factual allegation in support of intentional discrimination is his allegation that he was treated differently despite being "similarly situated," which allegation is blatantly contradicted by the undisputed video evidence.**

Gray alleges NISD violated Z.G.'s rights under Title VI of the Civil Rights Act of 1963. Gray asserts NISD subjected Z.G., who is African American, to intentional racial discrimination by disciplining Z.G. for fighting,

while refusing to discipline the other student in the fight, who is Hispanic, "despite the fact that the two students were similarly situated." Compl. ¶ 21.

Title VI states "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI "seek[s] to stamp out discrimination in programs receiving federal funds and ensure that federal resources do not support discriminatory practices." *Sewell v. Monroe Cty. Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020).

The essential elements of a Title VI discrimination claim are (1) there is race or national origin discrimination, and (2) the entity engaged in discrimination is receiving federal financial assistance. *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 706 n.9 (5th Cir. 1994). A plaintiff must prove discriminatory intent to receive compensatory damages. *Canutillo Indep. Sch. Dist. v. Leija*, 11 F.3d 393, 397 (5th Cir. 1996). To establish discriminatory intent at the pleading stage, a plaintiff must "plead facts in support of intentional discrimination." *Price ex rel. Price v. La. Dep't of Educ.*, 329 F.App'x 559, 561 (5th Cir. 2009); (citing *Alexander v. Sandoval,* 532 U.S. 275, 281 (2001) ("Title VI itself directly reach[es] only instances of intentional discrimination.") (quotation omitted)).

**1. Gray fails to sufficiently plead a critical element of a Title VI discrimination claim—that he was intentionally discriminated against.**

In light of undersigned's findings and recommendation that the Complaint does not plausibly allege that Z.G. and the Hispanic student were similarly situated, *see Supra* sec. IV.C.2, 3, Gray failed to sufficiently plead that he was intentionally discriminated against because he has no remaining non-conclusory allegations that could form the basis for concluding that he was intentionally discriminated against.

To reiterate, the whole premise of Gray's Title VI discrimination claim is his assertion that, although Z.G. and the Hispanic student were similarly situated (other than by race), they were treated differently following the fight, which differential treatment Gray alleges is evidence of racial animus because the only difference between the two students is their race. *See e.g.* Compl. at ¶ 23 (alleging that NISD actors chose not to discipline the Hispanic student in ways similar to Z.G., "despite the fact that both students had committed 'assault' and were in all respects similarly situated"); Pl.'s Resp. at 4 (concluding "it is certainly plausible to conclude that Z.G. and the Hispanic student were similarly situated such that Defendants' decisions could be construed as motivated by race").

Where, as here, the video blatantly contradicts Gray's allegations that Z.G. was similarly situated, the Court should rely on the depictions in the video. *Kennedy*, 165 F.4th at 944. As a result, the Court should not consider the allegation that the two students were similarly situated when determining whether Gray met his pleading burden to allege sufficient facts establishing intentional discrimination.

Once the allegation that the two were similarly situated is removed from the equation, the Complaint contains no other non-conclusory allegation of intentional discrimination. The Complaint does state, for example, that Z.G. was subjected to "intentional race discrimination" by NISD and the district's employees several times. *See, e.g.* Compl. at 20, 23. However, these assertions, without more, are quintessentially conclusory allegations and cannot substantiate a plausible factual allegation. *Chhim*, 836 F.3d at 469; *Iqbal*, 556 U.S. at 678. The undersigned therefore finds Gray failed to meet his burden.

**2. The Court is not holding Gray to a heightened pleading standard—rather Gray has relied exclusively on his theory that the students were, other than their race, similarly situated yet treated differently, as his sole allegation of intentional discrimination.**

This is a scenario in which the plaintiff chose to allege, as the sole basis for his allegation that Z.G. was intentionally discriminated against, that Z.G. was treated less favorably than another to whom Z.G. was "similarly situated"

except for his race. This is not a case where a court favors dismissal because plaintiffs *failed to allege* that they were "similarly situated" to others, thereby holding a plaintiffs to an impermissibly heightened pleading standard.

The Fifth Circuit has cautioned that, at the 12(b)(6) pleading stage, a plaintiff need not establish each element of the prima facie test under the *McDonnell Douglas* framework. *See Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)).[3] Doing so would be "improperly substituting an 'evidentiary standard' for a 'pleading requirement.'" *Id.* Therefore, although one of the elements of a prima facie case of intentional discrimination in a Title VI case is that the plaintiff "was treated differently from similarly situated students who were not members of his protected class," *Gonzalez v. Northside Indep. Sch. Dist.*, No. SA-20-CV-00926-XR, 2020 WL 5640459, at *4 (W.D. Tex. Sept. 22, 2020) (Chestney, J.) (citations omitted), a plaintiff need not *plead* a similarly situated individual at the pleading stage. *See Cicalese v. Univ. of Tex. Medical Branch*, 924 F.3d 762, 767 (5th Cir. 2019) ("scrutinizing" whether fellow employees were "really 'similarly situated' ... [is] more suited to the summary judgment phrase"). What matters is whether a plaintiff pleaded "sufficient facts on all of

---

[3] These cases apply *McDonnell Douglas* in the Title VII context, which operates in the same manner as Title VI. *See Baldwin v. Univ. of Tex. Medical Branch at Galveston*, 945 F.Supp. 1022, 1031 (S.D. Tex. Nov. 6, 1996), *aff'd* 122 F.3d 1066, 1997 WL 464467 (5th Cir. 1997).

the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim*, 836 F.3d at 470.

In this case, Gray not only chose to plead the Hispanic student was "similarly situated" to Z.G.—he relied on it entirely to support his claim of intentional discrimination. Absent Gray's implausible allegations that Z.G. was similarly situated to the Hispanic student, there are no other factual allegations in his Complaint that could support a plausible finding of intentional discrimination. Gray's complaint is unlike the one in *Sewell*, which withstood a 12(b)(6) challenge, and contained factual allegations that school officials used "verbal abuse" that was tied to the plaintiff's race, sex, and "stereotypical notions of masculinity." 974 F.3d at 584–585. Similarly, in *Cicalese*, the plaintiffs alleged that university personal told them to "go back to Italy," said that they "did not care about 'these Italians,'" and changed policies in a way that only impacted the two Italian plaintiffs. 924 F.3d at 765 (overturning a district court's dismissal in a "close call"). By contrast, Gray does not allege that any of the NISD officials targeted Z.G. with racially charged language nor does he allege other indicia of race-based discrimination.

The Supreme Court has declared "beyond dispute" that Title VI "prohibits only intentional discrimination." *Sandoval*, 532 U.S. at 280. After taking away (because it is blatantly contradicted by the video evidence) Gray's

allegation that Z.G. was "similarly situated" to the Hispanic student, Gray alleges no other facts supporting his claim of intentional discrimination that can sustain his Title VI claim.

The undersigned, therefore, recommends that the District Court find Gray has failed to sufficiently plead a Title VI claim.

### E. Leave to Amend

Defendants argue for the first time in their Reply that the Court should not grant Gray leave to amend his Complaint if the Court grants their Motion. Reply at 5. Though this argument is not properly before the undersigned because it was not raised in the Motion, the undersigned notes that Gray has already had one opportunity to amend his Complaint and has not requested another after Defendants filed their second Motion to Dismiss.

## V. Conclusion and Recommendation

Having considered Defendants' Motion to Dismiss (ECF No. 28), the responsive pleadings, the video evidence, and the applicable law, the undersigned concludes Gray failed to sufficiently plead a Title VI claim against NISD and Gray failed to overcome the qualified immunity defense asserted by the Officers.

The undersigned therefore recommends the District Court grant the Motion and dismiss all claims. Specifically, the Court should dismiss the §

1983 claim against Officers Parsons and Villarreal and dismiss the Title VI Claim against NISD.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties.

A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections. The district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written

objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 30th day of July, 2026.

**KELLY G. STEPHENSON**
**UNITED STATES MAGISTRATE JUDGE**